United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10

11   MEDHI SABERI,                              No. C 08-4232  JL

12              Plaintiff,

13       v.                                     **ORDER DENYING MOTION FOR**
                                                **RECONSIDERATION OF TAXING**
14   BFS RETAIL & COMMERCIAL                     **COSTS (Denying Docket # 171 )**
     OPERATIONS, LLC,
15
                Defendants.
16   _____/

17       **I.     Introduction**

18       Following this Court's decision of August 10, 2010 at Docket # 151, granting

19   summary judgment for Defendants as to all of Plaintiff's claims, Judgment was entered for

20   Defendants in this case August 11, 2010.

21       This Court by its ruling held that Plaintiff could not show any material facts in dispute

22   which would support his claims. The Court granted summary judgment for Defendant Dana

23   Girard on the following grounds:

24       1.     The facts as established by the admissible and competent evidence do not,

25              and cannot, support a viable cause of action against Defendant Girard for

26              harassment based on national origin or sex in violation of the California

27              Government Code Section 12940(j)(a) as a matter of law.

28       2.     Saberi cannot establish the elements necessary to support his claim against

C-08-4232 ORDER                                                          Page 1 of  15

**United States District Court**

For the Northern District of California

1    Girard for harassment based on national origin or sex in violation of the

2    California Government Code Section 12940(j)(a).

3    3.    Saberi's cause of action for national origin and sexual harassment is barred,

4    in whole or in part, by the statute of limitations. He cannot reasonably rely on

5    the continuing violation theory.

6    The Court granted summary judgment for Defendant BFS Retail and

7    Commercial Operations ("BFS" or "Firestone") as to the following

8    causes of action:

9    1.    Plaintiff's First Cause of Action, labeled in the caption as "National Origin

10   Harassment in Violation of the FEHA;"

11   2.    Plaintiff's Second Cause of Action, labeled in the caption as "Retaliation in

12   Violation of the FEHA;"

13   3.    Plaintiff's Fourth Cause of Action, labeled in the caption as "Wrongful

14   Termination in Violation of Public Policy."

15

16   The Court found as bases for this conclusion that there is no material issue of fact in

     dispute that:

17   •    The alleged "harassment" claimed by Saberi consists of stray comments not

18   based on his national origin or sex not so severe or pervasive as to

19   be unlawful harassment.

20   •    The alleged "harassment" claimed by Saberi is not actionable because Saberi

21   was not subjectively offended.

22   •    The alleged "harassment" claimed by Saberi is not actionable because it did

23   not relate to Saberi's sex, gender or national origin.

24   •    Saberi cannot prove a prima facie case of retaliation.

25   •    Saberi has no admissible evidence to show that his termination, or any other

26   alleged "adverse employment action" was causally connected to protected

27   activity.

28

1     •      Saberi has no specific and substantial evidence to show pretext.

2     •      Saberi's wrongful termination claim fails because the underlying statutory

3            claims fail.

4 (August 10, 2010 Order at Docket # 151, 50:7 - 51:14)

5            On August 25, 2010 Defendants BFS Retail and Dana Girard filed timely cost bills of

6 approximately $29,000 and $14,000, respectively. (Docket #s 153 and 154). There was

7 some colloquy regarding meeting and conferring, which the parties resolved. On January

8 31, 2011, costs were taxed in the  amount of $ 29,181.08 for Defendant Bridgestone Retail

9 Operations LLC and in the amount of $ 14,883.54 for Defendant Dana Girard against

10 Plaintiff Mehdi Saberi (Docket #s 169, 170). Plaintiff then filed a timely motion under Civil

11 Local Rule 54 for review of taxation of costs asking the Court to reconsider awarding costs

12 to Defendants as the prevailing parties.

### II.    Analysis

### A.    The presumption is that Defendants, as prevailing parties, are entitled to costs: It is Plaintiff's burden to overcome this presumption.

            Rule 54(d)(1) provides: "Except when express provision therefor is made either in a

statute of the United States or in these rules, costs other than attorneys' fees shall be

allowed as of course to the prevailing party unless the court otherwise directs...." Fed. R.

Civ. P. 54(d)(1). Rule 54(d)(1) therefore creates a presumption that the prevailing party will

be awarded its taxable costs. *Delta Airlines, Inc. v. August*, 450 U.S. 346, 352, 101 S.Ct.

1146, 67 L.Ed.2d 287 (1981); *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th

Cir.2006). To overcome this presumption, a losing party must establish a reason to deny

costs. *Dawson*, 435 F.3d at 1070). "[T]he rule creates a presumption in favor of awarding

costs to a prevailing party, but vests in the district court discretion to refuse to award costs."

*The Association of Mexican-American Educators v. State of California,* 231 F.3d 572, 579,

591 (9th Cir.2000) (en banc)

            The Ninth Circuit has approved the following reasons for refusing to award costs to a

prevailing party: (1) the losing party's limited financial resources; (2) misconduct on the part

**United States District Court**

For the Northern District of California

1  of the prevailing party; (3) the chilling effect of imposing such high costs on future civil

2  rights litigants; (4) whether the issues in the case were close and difficult; (5) whether the

3  prevailing party's recovery was nominal or partial; (6) whether the losing party litigated in

4  good faith; and (7) whether the case presented a landmark issue of national importance.

5  *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 888-89 (9th Cir.2010) (citing *Champion*

6  *Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir.2003))*; Assoc. of*

7  *Mexican-American Educators*, 231 F.3d at 592 (citing similar factors). However, the Ninth

8  Circuit also noted that it was "not attempting to create an exhaustive list of 'good reasons'

9  for declining costs." *Assoc. of Mexican-American Educators*, 231 F.3d at 593. In the case at

10  bar, the factors at issue are Numbers 1, 3, and 4: Plaintiff's financial condition, the possible

11  chilling effect and whether the issues were close and difficult.

12        While a district court must specify reasons for refusing to tax costs to the losing

13  party, a district court does not need to specify reasons for abiding by the presumption to

14  award costs. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir.2003).

15  Generally, a "district court need not give affirmative reasons for awarding costs; instead, it

16  need only find that the reasons for denying costs are not sufficiently persuasive to

17  overcome the presumption in favor of an award. The presumption itself provides all the

18  reason a court needs for awarding costs." *Id.*

19        **B.**    **In a civil rights case, the Court must consider possible financial hardship to plaintiff, or chilling effect on future plaintiffs.**

20

21        However, in civil rights cases, a court abuses its discretion when it awards costs

22  against a losing plaintiff without considering the plaintiff's limited financial resources or "the

    chilling effect of imposing such high costs on future civil rights litigants." *Assoc. of*

23  *Mexican-American Educators*, 231 F.3d at 593 (quoting *Stanley v. Univ. of S. Cal.*, 178

24  F.3d 1069, 1079-80 (9th Cir.1999)).

25        **1.**    **Financial Hardship**

26  As the court recently held in the *Rivera* case in the Eastern District:

27  A court abuses its discretion when it awards costs against a losing plaintiff without

28  considering the plaintiff's limited financial resources. *AMAE,* 231 F.3d at 592;

1    *Stanley v. University of Southern California*, 178 F.3d 1069, 1079-80 (9th Cir.1999)

2    ("[d]istrict courts should consider the financial resources of the plaintiff and the
     amount of costs in civil rights cases."). It is not necessary to find that the plaintiffs in

3    question are currently indigent; rather, the proper inquiry is whether an award of
     costs might make them so. *Stanley*, 178 F.3d at 1079-80 (referring to the possibility

4    that the plaintiff "would be rendered indigent should she be forced to pay" the
     amount assessed against her); see also *Mansourian v. Board of Regents of the*

5    *Univ. of California at Davis,* 566 F.Supp.2d 1168, 1171 (E.D.Cal.2008) (refusing to
     award costs against student plaintiffs, noting their "limited financial resources" and
     that they were barely able to cover their monthly living expenses).

6

7    *Rivera v. NIBCO*  701 F.Supp.2d 1135, 1143 (E.D.Cal.,2010)

8         Here, Plaintiff bases his claim of financial hardship on his being unemployed since

9    the termination of his employment with BFS in July 2008. See Case Docket Document 159

10   filed September 8, 2010, Declaration of Medhi Saberi in Support of Plaintiff's Objections to

11   Defendants' Bills of Cost. He argues that BFS, on the other hand, is a multi-national

12   corporation with manufacturing plants, global distribution and plant shipping facilities

13   throughout the world. Therefore, it would be unjust to require Plaintiff to pay Defendants'

14   costs.

15        Defendants ask this Court to reject Saberi's claim of either indigence or financial

16   hardship because Neither of these factors, however, has any bearing on Saberi's motion,

17   because (i) Saberi does not assert that he meets either criteria (Plaintiff's Mot. for Review

18   of Clerk's Taxation of Costs ("Mot."), Docket No. 171, p. 3, lns. 7-23); and (ii) Saberi – who

19   received over $112,000 from BFS in September and October 2010 as part of a class action

20   settlement and is a member of a wealthy family who supports him financially – is not

21   actually indigent or lacking in financial resources. (Young-Agriesti Decl. ¶ 3-5; Ex. A–C.) In

22   fact, Saberi's only factual assertion with regard to his financial status is that he "has been

23   unemployed since the termination of his employment with BFS in July 2008." (Mot. p. 3, lns

24   18-19.)

25        Persuasive legal authority supports Defendants' argument. Indeed, a plaintiff's

26   unemployment may lead a court to conclude that he or she is either indigent or would be

27   rendered indigent by being compelled to pay a defendant's costs. *Stanley v. University of*

28   *Southern California,*178 F.3d 1069, 1079 -1080 (9th Cir.1999). However, in this case the

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    plaintiff, Mr. Saberi was not indigent at the time the cost bill was filed, is not indigent now,

2    and would not be rendered indigent by being compelled to pay Defendants' costs. Teh

3    reason is that he has received a substantial settlement award following a class action suit

4    against BFS, and he is a member of a wealthy family which has in the past, continues in

5    the present, and will in the future support him financially, to the extent that he does not

6    need to work for a living, and testif8ied under oath that he refused a job offer comparable to

7    his last position with BFS because it would distract him from this lawsuit. This Court

8    consequently rejects Saberi's request to deny costs based on Saberi's *unemployment*

9    specifically because:

10           .. Saberi cites no legal basis to deny costs based solely on a party's employment

11   status when there has been no assertion or showing of indigence or limited financial

12   resources.

13           .. Saberi recently received over $112,000 from BFS, which far exceeds Defendants'

14   recoverable costs. Under the terms of the *Mehdi Saberi v. BFS Retail & Commercial*

15   *Operations, LLC* (Alameda Superior Court Case No. RG08406555) settlement (i) on

16   September 29, 2010, Saberi received a check for $40,000 as a class action representative

17   enhancement fee; and (ii) on October 7, 2010, Saberi received a check in the gross

18   amount of $72,820.91 ($58,129.28 after taxes and other required withholdings) as a

19   participating class member. According to Union Bank posting confirmations, Saberi cashed

20   these payments on October 5 and October 13, 2010. (Young-Agriesti Decl. ¶ 5; Ex. C.)

21   Both of these checks were received after the Court's August 11, 2010 order granting

22   summary judgment in favor of Defendants and after Defendants filed their Memoranda of

23   Costs in this action. (See Docket No. 152-154.) A losing plaintiff's recovery of settlement

24   proceeds means that the "plaintiff has the financial resources to pay an award of costs" and

25   "financial resources therefore is unpersuasive as a reason to deny costs." *Van Horn v.*

26   *Dhillon*, 2011 WL 66244 at * 4 (E.D. Cal. Jan. 10, 2011).

27           .. Saberi also has the financial support of his wealthy family. He testified under oath

28

United States District Court

For the Northern District of California

1  that he is part of a very wealthy family, that his father did not want him to work, that they

2  have provided him with financial support and assistance in the past, and that he "always

3  have had" his family's "financial support." (Young-Agriesti Decl. ¶ 3; Ex. A at p. 65-66; Ex. B

4  at p. 507.) In fact, Saberi stated that he did not work for a 9 to 12 year period in which his

5  wealthy family supported him. (Young-Agriesti Decl. ¶ 3; Ex. A at p. 65; Ex. B at p. 507.)

6  Accordingly, Saberi's lack of current employment is irrelevant to his financial status...

7       Following his termination from BFS, despite receiving a job offer in the same Store

8  Manager position with comparable pay from a Goodyear Tire store, Saberi declined. This

9  offer was made before Saberi's November 5, 2009 deposition. (Young-Agriesti Decl., ¶ 3;

10  Ex. A at p. 70-72.) During deposition, Saberi stated that he was going to "refuse" the offer

11  because his involvement with "this" – presumably his preoccupation with this lawsuit – was

12  "holding him back." (*Id.* at p. 72.) Hence, Saberi should not be permitted to use his

13  unemployment status to escape paying costs.

14       **2.      Chilling Effect**

15       Another factor is whether an award of costs would "chill" future civil rights litigation.

16  *Save Our Valley v. Sound Transit*, 335 F.3d 932, 946 (9th Cir. 2003). In cases that involve

17  "issues of substantial public importance" where plaintiffs end up losing, taxation of costs

18  may have the "regrettable effect of discouraging potential plaintiffs from bringing such

19  cases at all." *Rivera v. Nibco*, *Id.* at 1145.

20       Plaintiff, an individual of Iranian/Persian descent, claimed that he, along with

21  similarly situated employees, was subjected to verbal taunts and name calling in their

22  native Farsi language as well as other forms of harassment based on their nationality. See

23  deposition testimony of Ali Dastgah, Mac Shemirani and Plaintiff submitted in Support of

24  and in Opposition to Defendants' Motions for Summary Judgment. Girard, in fact, made

25  references to the September 11, 2001 ("9/11") attacks by stating that an Iranian/Persian

26  employee knew how to fly planes into buildings. *Id.* It has been well documented that since

27  9/11 there has been an increase in the number of complaints of discrimination based on

28  religion and/or national origin filed by those perceived to be Muslim, Arab, South Asian, or

Sikh. See Case Docket Document 160 filed 09/08/10, Declaration of Harry G. Lewis in

United States District Court

For the Northern District of California

1  Support of Plaintiff's Objections to Bills of Costs, Exhibit C. In fact, the Equal Employment

2  Opportunity Commission issued a question and answer information guide to assist

3  employers on implementing measures to prevent harassment and discharge. *Id.*

4  Plaintiff asks this Court to find that, because he is of Iranian/Persian descent,

5  complaining of the same harassment and retaliation the E.E.O.C. has recognized as

6  becoming increasingly commonplace (in the wake of the 9/11 attacks), awarding costs

7  would lead to a harsh result that could chill future litigants from vindicating important rights

8  under the civil rights laws.

9  However, the mere fact that Saberi alleged employment claims against BFS does

10 not permit him to avoid the consequences of his meritless suit. According to the Ninth

11 Circuit, Rule 54(d)'s "presumption in favor of awarding costs to prevailing parties" applies

12 equally to "defendants in civil rights actions." *Association of Mexican-American Educators*,

13 231 F.3d at 595.

14 This Court concluded that Saberi was not discriminated against or harassed

15 because of his national origin. In March 2008, employees managed by Saberi complained

16 to BFS that Saberi was charging customers for parts and services that were not provided.

17 These unsolicited complaints, originating with Saberi's own employees, triggered an

18 investigation that ultimately led to Saberi's termination. (Order Granting Defs' Mot. for

19 Summ. J., Docket No. 151, p. 45, lns 20-24, Aug. 10, 2010.) Thus, Saberi's termination had

20 nothing to do with his Iranian/Persian ancestry. Similarly, Saberi's harassment claim was

21 completely meritless. Saberi primarily alleged: (i) that Girard made a single comment that

22 Saberi "squeaked like a Jew"; and (ii) that Girard used Farsi profanities, which Saberi was

23 often observed enjoying. (Id. at p. 4, lns 5-7; p. 6, lns 7-8.) Hence, Saberi was unable to

24 show that the "Jew" comment and the Farsi profanities – without any reference to any race

25 or national origin – subjected him to unwanted harassing conduct because he was Iranian.

26 (*Id.* at p. 42, lns 4-5 ("none of the alleged profanities implicate Saberi's national origin.");

27 *Ayan v. Cal. Teachers Ass'n*,1999 WL 169525 (N.D. Cal. 1999), at * 9 (Where plaintiff

28 failed to demonstrate a connection between alleged harassment and national origin, no

prima facie case exists).

1    Here, Defendants did not engage in the unlawful conduct as claimed by Saberi, and

2  his speculation that awarding Defendants its costs would chill future litigation by

3  Persians/Iranians is unsupported.

4           **C.      Whether the issues in this case were close and difficult**

5           Saberi also argues that the issues in this case were "close" and "difficult" because

6  there were many witnesses and documents. But, Saberi ignores the key fact that this case

7  was resolved on summary judgment. Despite the many depositions set by plaintiff, and

8  documents produced by Defendants in response to Saberi's many requests, Saberi was

9  unable to point to a single issue of material fact in dispute. To the contrary, parties seeking

10 to show close and difficult issues cite the fact that the case could *not* be resolved on

11 summary judgment. See e.g., *Van Horn*, 2011 WL 66244 at * 5 (losing plaintiff attempted to

12 show "difficult and close" issues by pointing out district court's denial of summary judgment

13 motion, the length of trial testimony, and the length of jury deliberations).

14          This Court in fact held that Plaintiff failed utterly to present any material acts in

15 dispute by which a reasonable jury could find in his favor on any of his claims against

16 Defendants. (See Order discussed supra). Therefore, the legal and factual issues were not

17 sufficiently close or arguable that rejecting Plaintiff's claims would have a chilling effect on

18 potential plaintiffs.

19          **D.      Objections to specific costs**

20          Plaintiff also objects to certain specific costs claimed by Defendants.

21          **1. Permissible costs**

22          In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42  (1987), the

23 Supreme Court held that federal courts are limited to assessing those costs enumerated

24 under 28 U.S.C. § 1920. Section 1920 provides that:

25          A judge or clerk of any court of the United States may tax as costs the following:

26                  Fees of the clerk and marshal;

27                  Fees of the court reporter for all or any part of the stenographic transcript

28                  necessarily obtained for use in the case;

                    Fees and disbursements for printing and witnesses;

*United States District Court*
For the Northern District of California

1    Fees for exemplification and copies of papers necessarily obtained for use in

2    the case;

3    Docket fees under section 1923 of this title;

4    Compensation of court appointed experts, compensation of interpreters, and

5    salaries, fees, expenses, and costs of special interpretation services under

6    section 1828 of this title.

7    Plaintiff objects to specific categories of costs, but only to $5,769.69 of the

8 $30,540.03 sought by BFS. (Compare Mot., with BFS's original Bill of Costs, Docket # 153,

9 p. 1.) He does not object to $24,770.34 of BFS's requested costs. Similarly, Saberi

10 specifically objects to only $4,834.99 of the $22,056.79 sought by Girard. (Compare Mot.,

11 with Girard's original Bill of Costs, Docket No. 154, p.1.) Therefore, as a threshold matter,

12 BFS and Girard should recover at minimum the undisputed amounts of costs sought, or

13 $24,720.34 and $17,221.80 respectively.

14          **a.      Fees for Service of Summons and Subpoena**

15    Saberi objects to $21.09 claimed for postage ($2.24 and $8.61) and sales tax ($3.83

16 and $6.41). However, BFS necessarily incurred these expenses in serving the summons

17 and subpoenas, expenses which are recoverable under 28 U.S.C. § 1920.

18 Saberi objects to $140.00 claimed for service of process fees. Saberi objects on the basis

19 that rush and same day service fees should not be allowed. Initially, the fees to which

20 Saberi objects are the entire fees for service, not just any rush charges portion. But

21 additionally, after making numerous efforts to cooperatively arrange for appearance of Ali

22 Dastgah for deposition, and Saberi's interference with those efforts, it became necessary to

23 serve him. Since the deposition was set, then was off, then was back on, and the parties

24 were then trying to complete discovery within the time permitted for discovery and had to

25 work around the numerous depositions noticed by Saberi, rush service efforts were

26 necessary and reasonable under the circumstances.

27    Saberi objects to service costs for Chris Syo, an individual identified as a witness in

28 Saberi's Initial Disclosures as Chris Syi. On March 12, 2010, BFS asked Saberi to accept

service on Mr. Syo's behalf, as Saberi had with many other witnesses identified in his

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Initial Disclosures. Plaintiff refused. Therefore, Defendant had no choice but to subpoena

2  him to testify. Defendants assert that these costs are properly taxed under 28 U.S.C. §

3  1920.

4        **b.      Court Reporter Fees.**

5        Different court reporters break down their fees in different ways. As a whole, the

6  court reporter fees for the transcripts of the depositions of Mr. Dastgah and Mr. Shermirani

7  actually cost less per page than other transcripts in this case. Girard should not be

8  penalized because the reporter simply describes her charges differently. Thus, the full court

9  reporter fees for these depositions are properly taxed in their full amount, including this

10  amount that is referenced as an appearance fee.

11       **c.      Fees for Printed or Electronically Recorded Transcripts.**

12       As explained in the Declaration of Kimberly A. Donovan in Support of Defendant

13  Dana Girard's Bill of Costs After Entry of Judgment (Docket No. #157, ¶ 4), in light of the

14  fact that the depositions of Messrs. Dastgah and Shemirani were taken very late in the

15  discovery period, and Defendants were already trying to file their motions for summary

16  judgment submitted on a timely basis, but counsel needed these transcripts. To expedite

17  delivery for the transcripts counsel for Dana Girard paid for both Girard's counsel's copy of

18  the transcript and for BFS's counsel's copy. Thus, only one copy of each transcript was

19  purchased by each defendant. It was simply for convenience and to allow for expedited

20  payment and receipt of the transcripts that Girard paid for the copies on behalf of both of

21  the two Defendants.

22       Deposition transcript fees are specifically recoverable under 28 U.S.C. § 1920(2).

23  Saberi objects to certain charges that accompany deposition transcripts. Notably, 14 of the

24  17 depositions in this case were noticed by Saberi. Accordingly, for the vast majority of

25  depositions, counsel for Saberi selected the court reporting agency; BFS had no control

26  over the fees assessed by the court reporting agency – which was selected by Plaintiff.

27  Therefore, Saberi's objections to charges assessed for handling, court reporter parking,

28  rough disk, etc. – when assessed by the agency selected by Saberi – are particularly

specious.

1   The fees Defendants seek were actually and reasonably incurred, and should be

2   taxed.

3       **d.      Witness-related Costs.**

4   There is no double recovery of witness fees or service fees related to witness Ali

5   Dastgah. A portion of the charges were for service fees to Swift Attorney Service for

6   actually attempting to and serving Mr. Dastgah, while a portion was for statutory witness

7   fees that were advanced by the service company. (See Dkt. #156.) All of these costs are

8   recoverable.

9       **i.      Room, Board, Transportation, and Airfare**.

10  Saberi objects to food and hotel costs for witness Geraldine Tigner's second night in

11  San Francisco, hotel and food costs for witness Dick Clark, Tigner's cab and toll fare, and

12  the entire airfare of witness Jim Fogelquist.

13  The standard for overnight subsistence is whether "the overnight stay is required at

14  the place of attendance because such place is so far removed from the residence of such

15  witness as to prohibit return thereto from day to day." 28 U.S.C. § 1821(d)(1). Geraldine

16  Tigner traveled from her residence, Detroit Michigan, to San Francisco to appear for her

17  deposition. Because of the plane schedules and availability, it would have been impossible

18  for her to spend only one night in San Francisco, necessitating her two-night stay. Similarly,

19  Richard Clark traveled to San Francisco from his Orange County residence. Because of the

20  plane schedules, he too stayed the night. Both Ms. Tigner and Mr. Clarks' residences were

21  far removed from San Francisco, necessitating their respective overnight stays. These

22  costs are recoverable pursuant to 28 U.S.C. § 1821(d)(1).

23  With respect to Ms. Tigner's toll and cab fare, she did in fact incur over $120 in

24  roundtrip toll/cab fare, but has not been able to locate her receipts. 28 U.S.C. § 1821(c)

25  requires receipts only for "parking" – not toll or cab fare. Obviously, BFS has provided

26  documentation that she flew into SFO from Detroit. Given that she appeared at deposition

27  in San Francisco (also undisputed), Plaintiff is assured that she did in fact travel from SFO

28  to the city, necessitating travel expenses.

**United States District Court**
For the Northern District of California

1    With respect to Mr. Fogelquist's airfare, in meet and confer correspondence dated

2 after BFS filed its costs bill, BFS agreed to withdraw the cost of his upgrade (totaling

3 $44.00), and to seek to recoup only the expense of his base flight from Arizona ($217.40).

4 (See Exs. A & B to Harry Lewis' Decl. in Support of Plaintiff's Objections to Bill of Costs,

5 Docket No. 160.) However, Saberi now seeks to have the cost of the entire flight denied,

6 despite the fact that economy airfare is a well-established recoverable cost. See, e.g.,

7 MEMC Electronic Materials v. Mitsubishi Materials, 2004 U.S. Dist. LEXIS 29359 (N.D. Cal.

8 2004).

9    For these reasons, these costs (excepting the $44.00 upgrade for Mr. Fogelquist)

10 should be taxed.

11        **e.    Fees for Exemplification and Copies**

12    As set forth in the Declarations of counsel for BFS and Girard which accompany

13 their Cost Bills, all of the copying fees sought in the Bill of Costs were costs actually

14 incurred by Defendants, and necessarily incurred in the handling of this case. (Declaration

15 of Young-Agriesti In Support of BFS's Bill of Costs, Docket No. 153-1, ¶¶ 3, 4, 6;

16 Declaration of Kimberly Donovan In Support of Dana Girard's Bill of Costs, Docket No. 157,

17 ¶¶ 5-7.) 28 U.S.C. § 1920 specifically provides that copying fees are recoverable "where

18 the copies are necessarily obtained for use in the case." After adding up the total copying

19 costs for this case, BFS voluntarily discounted by 20% the non-discovery related copying

20 costs, to adjust for any non-essential copying - despite the fact that defendant in fact

21 incurred these costs. Similarly, Girard also discounted his copying costs by 20 %.

22 Saberi ignores the fact that Defendants scrupulously detailed the costs sought to be

23 recovered as best as it could. For example, BFS' cost bill including attached table

24 (specifying cost, specific statute authorizing cost) and supporting documentation was 106

25 pages. The fact that each of the many thousands of page copies were not specifically

26 identified does not bar Defendants recovering these charges. *Meier v. U. S.*,  2009 WL

27 982129 (N.D. Cal. April 13, 2009). As in *Meier*, this case has been hotly litigated for a

28 number of years. Counsel for Defendants have provided an affidavit certifying that these

costs were necessarily obtained. Therefore, as in Meier, these costs should be taxed.

United States District Court

For the Northern District of California

### f.    Copies BFS was Required To Produce to Girard.

BFS was required to serve co-defendant Girard with copies of discovery responses produced to Plaintiff during discovery. Therefore, these costs were necessarily incurred and recoverable. 28 U.S.C. § 1921(4); LR 54-3(d)(2).

### g.    Discovery Documents Actually Served On Other Parties.

It is difficult to tell what 132 pages Plaintiff refers to in G-1. Nonetheless, G-1 represents discovery documents actually served on Plaintiff and co-Defendant Girard. Therefore, these costs were necessarily incurred and recoverable. 28 U.S.C. § 1921(4); LR 54-3(d)(2).

### h.    Color copies.

The very few color copy charges relate to color photographs taken in connection with the investigation that led to Plaintiff's termination. Defendants contend and Plaintiff does not dispute that they were necessarily obtained for use in the case. (Declaration of Young-Agriesti In Support of BFS's Bill of Costs, Docket No. 153-1,¶¶ 3, 4 6.) Therefore, these costs were necessarily incurred and recoverable. 28 U.S.C. § 1921(4).

### i.    Copy Rate.

Finally, the rate of $0.19 per page is reasonable. In his meet and confer letter, Plaintiff asserts that only the charges of an "outside print shop" are per se reasonable. (See Ex. A to Harry Lewis' Decl. in Support of Plaintiff's Objections to Bill of Costs, Docket No. 160, p. 7.) Counsel for BFS, Rutan & Tucker, LLP, actually contracts with an outside service (IBM/Xerox) to provide "in-house" duplication. The rate of $0.19 per page is not designed to generate profit for the firm. Rather, it seeks to recoup the cost of the copying, as well as applicable overhead charges. (Young-Agriesti Decl., ¶ 6.) The copying charges, as actually incurred, should be taxed.

### III.    Conclusion

This Court finds that Plaintiff fails to carry his burden of rebutting the presumption that Defendants, as prevailing parties, should receive an award of their taxable costs.

With respect to considerations unique to a civil rights case, Plaintiff's allegation of indigence or financial hardship due to his unemployment is immaterial to this analysis

1  because Plaintiff is the beneficiary of a substantial settlement in a class action lawsuit

2  against this same employer, comes from a wealthy family which supports him financially,

3  and does not need to work, so his unemployment is of no consequence to an analysis of

4  his financial condition. The Court finds that payment of Defendants' costs would not be a

5  financial hardship for Plaintiff. With respect to a possible chilling effect of the decision

6  against him and consequent taxation of costs on other potential plaintiff's of Iranian

7  descent, he fails to show that his claims were close or difficult enough to create such an

8  effect. In fact, his case against Defendants was decided on summary judgment, after his

9  failure to show any material facts in dispute which would support the merits of his claims.

10      Finally, Plaintiff's objections to virtually all of the specific costs claimed by

11  Defendants are likewise without merit. For all these reasons, Plaintiff's motion to re-tax

12  costs is denied and the award of costs in favor of Defendants is affirmed.

13      IT IS SO ORDERED.

14  DATED: May 23, 2011

15

16      _____
        James Larson
        United States Magistrate Judge

17

18

19

20  G:\JLALL\CASES\TERMED\08-4232\Order deny 171.wpd

21

22

23

24

25

26

27

28

*United States District Court*
*For the Northern District of California*